**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**R. Bruce HOGAN, Robert A. Hogan, William W. Curtis, and Randy L. Vogel, Defendants–Appellants.**

No. 95–4011.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1996.

Decided July 12, 1996.

Gregory M. Gilmore (argued), Office of the U.S. Attorney, Springfield, IL, for U.S.

Jon G. Noll, Jeffrey T. Page (argued), Springfield, IL, for R. Bruce Hogan, Robert A. Hogan, William W. Curtis, Randy L. Vogel.

Before POSNER, Chief Judge, and KANNE and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This case is duck soup—misdemeanor convictions, only fines imposed, and a challenge on appeal only to the sufficiency of the evidence. We affirm.

The 1994 duck hunting season in central Illinois opened on October 27. On that day, Bruce and Robert Hogan, along with William Curtis, Randy Vogel, and other members of the Long Lake Hunt Club, went hunting on club grounds located along the Illinois River near the town of Browning in Schuyler County. The ducks, it seems, came out ahead, losing only two hens and a drake to the hunters. Compared to these slim losses, nine duck hunters were bagged on a bevy of charges.

The Hogans, Curtis, and Vogel were convicted following a bench trial before Judge Richard Mills in the district court. The charges included violations of 16 U.S.C. § 703, a class B misdemeanor, which carries a penalty of up to six months imprisonment and a $5,000 fine. The Hogans were each fined $1,100; Curtis was fined $1,000; and Vogel $2,100.

In this appeal, the four defendants contend that the evidence was insufficient to sustain their convictions. The government, however, citing *United States v. Hickok,* 77 F.3d 992 (7th Cir.1996), argues that the defendants failed to preserve the issue because they didn't renew their motion for a judgment of acquittal following the close of all the evidence or within the seven-day period set out in Rule 29(c) of the Federal Rules of Criminal Procedure. Accordingly, the government contends that the convictions cannot be disturbed absent a manifest miscarriage of justice. At oral argument, the defendants conceded that a waiver occurred.

■ We disagree. The rule that a motion for a judgment of acquittal must be made to preserve the issue of evidence sufficiency on appeal has general applicability in criminal cases, most of which are tried to juries. It is inapplicable in this case, however, which was tried to the court. In *United States v.*

*South,* 28 F.3d 619 (7th Cir.1994), we determined that in a case tried to the court it is unnecessary to move formally for a judgment of acquittal. As far back as *United States v. Hon,* 306 F.2d 52, 54 (7th Cir.1962), *overruled on other grounds,* 507 F.2d 22 (7th Cir.1974), we stated:

[T]here can be little or no need for a formal motion for a judgment of acquittal in a criminal case tried to a court without a jury upon the defendant's plea of not guilty. The plea of not guilty asks the court for a judgment of acquittal and a motion to the same end is not necessary.

*See also United States v. Atkinson,* 990 F.2d 501 (9th Cir.1993).

■ Our task on appeal, therefore, is to review all the evidence and the reasonable inferences that can be drawn from that evidence in the light most favorable to the government. *United States v. Pritchard,* 745 F.2d 1112 (7th Cir.1984). We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also United States v. Gonzalez,* 933 F.2d 417 (7th Cir.1991).

■ Looking at the evidence, we cannot find that it is insufficient. The elements of a violation of 16 U.S.C. § 703 are that the area was baited; that the defendants took or attempted to take migratory birds over the baited area; and that, in fact, the birds involved were migratory birds. The offense is a strict liability crime; a defendant is responsible whether or not he knew the area was baited. In this case, the defendants were hunting ducks; ducks are migratory birds. Thus, the only issue is whether the area was in fact baited.

■ As we have noted, the defendants involved in this appeal were members of the Long Lake Hunt Club. Long Lake consists of an upper and a lower lake. The incidents with which we are concerned occurred on the lower lake, the site of three duck blinds. According to the testimony of Virgil Gobel, the caretaker of the club and a witness for

the defense, prior to the hunting season certain preparations are made. When the water level in the river is high during the spring, the area is under water. As the river recedes, the lake levels also go down. When the area is sufficiently dry, the club plants millet, also known as bird seed. The only conceivable purpose for planting millet is to attract ducks and other migratory waterfowl. In 1994, according to the log kept by Mr. Gobel, planting was done at the upper lake on July 6 and at the lower lake on approximately July 18. Once the crops grow and prior to the hunting season, the crop is mowed. Then, if the club is to avoid violating the baiting laws, the vegetation must be cleaned up so that once hunting begins, the area is not baited.

On September 30, just short of a month prior to the start of the 1994 duck hunting season (recall we said it began on October 27), United States Fish and Wildlife agents conducted a routine air patrol over the Illinois River. When they passed over Long Lake, they saw mowed areas of a planted crop around duck blinds. They photographed the area. During the next few weeks, the Illinois Department of Conservation determined which sites in the state would be inspected for baiting violations. Long Lake was chosen. In carrying out the inspection on October 24, officers walked into the Long Lake club and saw mowed millet stalks and seeds floating throughout an area in which there were duck blinds. Officer Blaine Eickelschulte took samples of cut or mowed vegetation. On October 25, Illinois conservation officers again flew over the area and took photographs.

On the opening day of the season, a number of officers staked out three duck blinds at the club under cover of darkness. Several hunters, including the defendants in this case, entered the blinds around 6:30 a.m. and began calling ducks with duck calls. After about an hour of hunting (and with three ducks down), the officers approached the hunters and subsequently inspected the area around each of the blinds. They observed mowed millet with seed heads scattered about.

The hunters were told to return to the clubhouse, where the violations for which they were cited were explained to them. They admitted that the club had planted millet and mowed it, but they contended that it had been removed. Randy Vogel, in fact, stated that he had raked and removed the mowed millet. When Vogel was unable to convince the officers that there was no millet, he said that he would "take care of it with a phone call," implying that he would call Brett Manning, the Illinois Director of Conservation, who was his friend. In an apparent response to the call, Manning ordered that a site visit of the club be made. Again officials, including the chief law enforcement officer for the Department of Conservation, inspected the area and again concluded that it was baited. As they walked through the flooded area, Mr. Vogel said that he had burned the millet. When he was asked where he had burned it, he said he had not burned it, but another person had. Vogel also stated that the millet plants were not mature when the millet was mowed and thus there were no seeds to be an attractant. In response, an officer reached into the water and grabbed handfuls of the mowed millet, squeezed it, and felt hard seeds. Vogel did the same and acknowledged that seeds were in fact present.

In this appeal, the defendants claim that the area was not baited because the club took all necessary actions to dispose of the millet before the hunting season and that any stray millet found in the area did not contain mature seeds.

On the first claim—that they disposed of the millet-Gobel testified that he and his wife went to the lower blinds at about six o'clock the evening of October 2, raked up the mowed millet around one of the blinds, and burned it and some unraked millet around another blind. The millet, he said, was dry and they did not need to use an accelerant to get the fire started. Judge Mills rejected this testimony, stating that Gobel said that he and his wife raked an area 40 feet in diameter and burned the raked millet and the area around the other blind, all in an hour and a half. He found it "rather difficult to believe that Gobel and his wife could per-

form the work in such a short period of time." Judge Mills also could not credit Gobel's testimony that the millet was dry. The pictures taken just two days earlier showed that the millet was green. In addition, the log book, which was the record of work done at the club, did not reflect that raking and burning were done on October 2. Judge Mills also rejected Vogel's statements, made the day of the events, regarding the disposal of the millet. Furthermore, several officers testified that the millet was, in fact, still there; it had not been removed.

Which takes us to the second claim—that the millet did not contain mature seeds. Several officials testified that the seeds were mature. For instance, Officer Eickelschulte discussed a sample of the vegetation which he collected from the blind area. He stated that there were mature seeds in the sample. He also related his observations of the area:

> [W]hen I went into the area on the early morning hours of the 24th and found evidence of cut vegetation, mature heads and seeds, seeds in those heads floating in the water, material that had been left behind from the mowing and had not been cleaned up, at that point in time my judgment call was that yes, this was a baiting violation.

An agronomist testified that there were mature seeds in the samples he was asked to examine. In addition, when the chief enforcement officer for the Illinois Department of Conservation examined the scene in response to Vogel's phone call to Director Manning, he picked up handfuls of the vegetation and reportedly stated that the situation was "offensive."

One other issue was raised and emphasized during argument, though not in the briefing of this appeal—that is, that there may have been a dispute between the officials about whether there were mature seeds immediately adjacent to the blind at which the Hogans and Vogel were hunting. Judge Mills considered the issue and concluded that because the blind was within 200 yards of another of the blinds, the men were hunting over a baited area whether the area directly in front of them contained seeds or not. The "zone of influence" of bait, the judge said, has been found to extend as far as 300 to 500 yards. *See United States v. Chandler III,* 753 F.2d 360 (4th Cir.1985). Judge Mills also pointed out that at trial the defendants conceded the issue. We have no trouble agreeing that the zone of influence extends to the blind in question, and we have considerable trouble feeling obligated to consider the issue, given the manner in which it was raised.

In short, there was sufficient evidence in this record to support a conviction, and the judgment is AFFIRMED.