Jaray HARRIS, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 274, 2008.

Supreme Court of Delaware.

Submitted: Nov. 12, 2008.
Decided: Jan. 23, 2009.

---

Kevin M. Howard, Esquire, Young, Malmberg & Howard, P.A., Dover, Delaware, for Appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, and BERGER, Justices.

BERGER, Justice.

In this appeal we consider, among other issues, what it means to suffer a "physical injury," as an element of the crime of second degree assault. Appellant elbowed a police officer in the forehead, causing a red mark. The officer also suffered some scratches on his knee during a scuffle with appellant. We hold that these *de minimus* "injuries" do not constitute an impairment of physical condition because they did not reduce the officer's ability to use the affected parts of his body. Accordingly, we reverse appellant's second degree assault conviction. The nine remaining convictions are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 2007, the Safe Streets unit of the Dover City Police responded to a complaint that people were smoking marijuana in a maroon Jeep in a parking lot on

Kirkwood Street. As the police arrived, several people were milling around, and Jaray Harris was sitting in the front passenger seat of a maroon Jeep. Harris quickly got out of the car, then opened the rear passenger door and appeared to place something in the car. After closing the back door, Harris started walking away. Dover Police Officer Anthony DiGirolomo smelled burnt marijuana in the area around the Jeep. He and other officers searched the Jeep and found a bag of powdered cocaine in a box in the glove compartment; a bag of marijuana stuffed between the driver's seat and the center console; and a bag of crack cocaine on the right rear floor. They also found Harris's wallet, his identification card, and several bills addressed to Harris in the car. DiGirolomo testified that he had seen Harris driving the Jeep many times, and that he believed the car was registered to Harris's girlfriend.

The police arrested Harris and brought him to the station for processing. At about midnight, Police Officer Christopher Bumgarner and Probation Officer John Wheeler took Harris and two others to be arraigned at Justice of the Peace Court 7, which is located next to the police station. After the arraignment, Harris tried to flee the building, and Bumgarner chased him. Bumgarner jumped on Harris's back, trying to subdue him. During the scuffle, Harris elbowed Bumgarner in the forehead, leaving a red mark on Bumgarner's face. While the two were still struggling, Wheeler grabbed Harris and they tumbled out the door and down the steps. Wheeler fractured his leg in the fall, but continued to pursue Harris, who was running from the building. Eventually, the two officers subdued Harris and returned him to custody.

Harris was charged with resisting arrest, possession with intent to deliver cocaine, possession of marijuana, first degree assault, second degree assault and other related crimes. After a bench trial, the Superior Court found him not guilty of two weapons charges and guilty of ten other charges, including the two assault charges and possession with intent to deliver cocaine. Harris appealed only the assault and possession with intent to deliver convictions.

## DISCUSSION

■ Harris argues that the Superior Court erred in finding him guilty of assault. A person is guilty of assault in the first degree if he "intentionally causes serious physical injury to a law-enforcement officer...."[1] If a person causes "physical injury," but not "serious physical injury," he is guilty of assault in the second degree.[2] Harris argues that he did not act intentionally because he did not have the "conscious object" to injure either officer. He was trying to flee, and any injuries were sustained by accident.

Harris's argument fails because, "[a] person is presumed to intend the natural and probable consequences of the person's act."[3] When Harris ran out of the courthouse, the natural and probable consequence of his conduct was that law-enforcement officers would chase him in an effort to return him to custody. But for Harris's conduct[4], Wheeler would not have chased after him, fallen down, or broken his leg. Thus, Harris is criminally responsible for causing that injury.

1. 11 Del. C. § 613(a)(5).

2. 11 Del. C. § 612(a)(3).

3. 11 Del. C. § 306(c)(1).

4. *See:* 11 Del. C. § 261 (establishing the "but for" standard of causation).

Harris next argues that the second degree assault charge should be reversed because there was insufficient evidence that Bumgarner suffered a physical injury. Bumgarner testified that he felt a "jarring sensation" when Harris elbowed him in the forehead. He denied feeling any pain. The contact left a red spot on his face, but apparently caused no swelling or other physical effects. Bumgarner also testified that he scraped his knee; that the scrape hurt; and that he treated it by washing it off and applying Neosporin. Bumgarner did not seek medical attention for either "injury."

Physical injury is defined as "impairment of physical condition or substantial pain."[5] Here, there was no "substantial pain," so the only question is whether Bumgarner suffered an "impairment of physical condition." In *State v. Higgins*,[6] the Oregon Court of Appeals interpreted the same statutory language, using dictionary definitions, to mean "harm to the body that results in a reduction in one's ability to use the body or a bodily organ." Applying that definition, the Oregon court held that "scratches and scrapes that go unnoticed by the victim, that are not accompanied by pain, and that do not result in the reduction of one's ability to use the ... bodily organ for any period of time, do not constitute an impairment of physical condition."[7] By contrast, the Oregon court held that there was sufficient evidence of physical injury where the victim suffered a one half inch gash that was still bleeding when the police arrived, even though the victim declined the suggestion that he seek medical attention for the cut.[8]

We find Oregon's definition of "impairment of physical condition" useful because it recognizes that some harms may be so minimal that they do not impact the victim's physical condition. After reviewing the evidence in the light most favorable to the State, we conclude that Bumgarner did not suffer any impairment of physical condition. The elbow to his head resulted in nothing more than a red mark on Bumgarner's skin. There is no evidence of bruising, swelling, or other "after effects" that impaired his physical condition in any way. Bumgarner also suffered some scratches on his knee that "hurt." Still, there is no evidence that the scratches caused any continuing discomfort or limited his use of his knee. In sum, we hold that the two harms were so *de minimus* that they did not satisfy the statutory definition of "physical injury."[9]

Finally, Harris argues that there was insufficient evidence to support his conviction of possession with intent to deliver cocaine. He says that the evidence was circumstantial and that the trial court disregarded the absence of evidence usually associated with the sale of drugs, such as packaging materials, a scale, and a customer list. This argument lacks merit. It is settled law that circumstantial evidence is sufficient to support a conviction.[10] Thus, the only issue is, "whether, any rational trier of fact, viewing the evidence in

---

**5.** 11 Del. C. § 222(23).

**6.** 165 Or.App. 442, 998 P.2d 222, 224 (2000).

**7.** *Id.* at 224–225.

**8.** *State v. Hart*, 222 Or.App. 285, 193 P.3d 42 (2008).

**9.** *Cf. Davis v. State*, 1999 WL 86055 (Del.) (Where the victim, whose skin turned red after being kicked, suffered a "physical injury" because the red area later showed bruising and the victim suffered pain and general tenderness for more than one month after the incident.)

**10.** *Winer v. State*, 950 A.2d 642, 646 (Del. 2008).

the light most favorable to the State, could find [Harris] guilty beyond a reasonable doubt."[11]

Harris was the only person in the Jeep, and he had been seen driving it on other occasions. His personal identification and mail also were found in the Jeep. These facts support a finding that Harris was the custodian of the Jeep and had dominion and control over the cocaine found in it.[12] In addition, DiGirolomo testified that Harris had $111 in cash when arrested, and that the crack cocaine found in the Jeep was broken into small rocks, of a size commonly sold on the street. He also noted the absence of any paraphernalia for ingesting the drug. These three facts support a finding that Harris possessed the cocaine for sale, rather than for personal use. In sum, there was ample evidence to support the trial court's guilty verdict.

## CONCLUSION

Based on the foregoing, the assault second degree conviction is reversed and all remaining convictions are affirmed. This matter is remanded to the Superior Court for further action in accordance with this decision. Jurisdiction is not retained.

---

11. *Robertson v. State*, 596 A.2d 1345, 1355 (Del.1991).

12. *Holden v. State*, 305 A.2d 320, 322 (Del. 1973).