SHAKA MUMITT, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 81, 2009.
Supreme Court of Delaware.
Submitted: September 2, 2009.
Decided: October 6, 2009.
Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

ORDER
JACK B. JACOBS, Justice
This 6th day of October 2009, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:
1. Shaka Mumitt appeals from his Superior Court conviction of Assault in the Third Degree.[1] Mumitt argues that the Superior Court committed plain error in failing to dismiss the charge of Assault in the Third Degree, because the State failed to present sufficient evidence from which a rational trier of fact could conclude that the victim suffered physical injury. We find no merit to his argument and affirm.
2. Barbara and Beth[2] are twins who were born on August 27, 1994 in Florida, where they lived with their mother until she died in 2005. Barbara and Beth then came to Delaware to live with their grandfather, Shaka Mumitt, and their step-grandmother, Helen Harmon, at their home in Frankford.
3. Mumitt insisted that the twins do well in school. He also required them to do chores around the house, such as doing the laundry and washing the dishes. If Barbara or Beth lied, did poorly in school, or did not do as Mumitt asked, he would beat them with a belt. Mumitt also abused them sexually.
4. At one point, Beth received a bad grade on a homework assignment, and hid the grade from Mumitt, who found out about it after Beth's teacher called him. Mumitt then made Beth strip and hit her with the belt. Barbara testified that she was in the other room and could hear Beth crying. Later, Harmon "tapped" Beth "across the butt." Beth told Harmon that her buttocks were sore because Mumitt had hit her with the belt. At that time, Harmon chose not to say or do anything about what Beth had told her.
5. Later, Barbara received a bad grade on her report card. Because she did not want to incur Mumitt's ire, she attempted to deceive him by changing the grade on her report card. When Mumitt found out about the lie, he told Barbara he would beat her the same way or worse than he did her twin sister. Although Harmon overheard Mumitt say this to Barbara, she initially chose not to say or do anything. But later, after Harmon went to work, she "started thinking and ... said `I got to go and do something about this.'" Harmon then went to the courthouse and filed for a protection from abuse order on behalf of herself and the twins, which was granted.
6. Meanwhile, Mumitt had called the girls' school and notified the guidance counselor that he was on his way over to discuss the situation with Barbara regarding her report card. After receiving Mumitt's call, the guidance counselor took Barbara out of class and told her that her grandfather wanted to talk to her. It was at this time that Barbara stated that she was scared to see Mumitt, and that he was physically and sexually abusive to her and her sister. Barbara also mentioned that Mumitt threatened to beat her because of the report card. The counselor then took Beth out of class, and had the girls talk to a social worker and police officer. At this point, Harmon was called and asked to come to the school, and Mumitt was not permitted to see the girls.
7. An information was filed against Mumitt on May 14, 2008. On November 10, Mumitt was indicted on several sex-related offenses, and also on one count of Assault in the Third Degree stemming from the incident in which he beat Beth with a belt. A jury trial commenced on November 24, 2008. The jury convicted Mumitt of thirteen charges, including Assault in the Third Degree. Mumitt was sentenced to twenty-three years at Level V, followed by probation. For the Assault conviction, Mumitt received one year at Level V suspended for one year at Level III probation. This appeal followed.
8. Mumitt claims that the Superior Court erred by failing to dismiss his charge of Assault in the Third Degree. He argues that no rational trier of fact could conclude that he assaulted Beth when he hit her bare buttocks with a belt, because there was "absolutely no evidence that this `beating' caused either an `impairment of physical condition' or any `substantial pain.'"
9. Mumitt concedes that he did not raise this issue before the trial court. The State concedes, however, that the trial judge addressed it sua sponte. Therefore, the issue is not waived for purposes of appeal.[3] In reviewing the sufficiency of the evidence to support the jury's verdict, the relevant inquiry is whether, considering the evidence in the light most favorable to the prosecution, including all reasonable inferences to be drawn therefrom, any rational trier of fact could have found Mumitt guilty, beyond a reasonable doubt, of the essential elements of the crime.[4] In so doing, this Court does not distinguish between direct and circumstantial evidence.[5]
10. Under 11 Del. C. § 611, "[a] person is guilty of assault in the third degree [where] ... [t]he person intentionally or recklessly causes physical injury to another person...."[6] "Physical injury" is defined as "impairment of physical condition or substantial pain."[7] These terms are not further defined in the Criminal Code, but this Court has defined "impairment of physical condition" to mean "harm to the body that results in a reduction in one's ability to use the body or a bodily organ."[8] We have not defined the term "substantial pain," but conclude that the term should be given "its commonly accepted meaning...."[9]
11. In Harris v. State,[10] we discussed what is needed to establish "physical injury" for purposes of proving Assault in the Third Degree. In Harris, the defendant elbowed a police officer in the forehead, leaving a red mark. The officer testified that he felt no pain. The officer also testified that, while subduing the defendant, he scraped his knee, and that the scrape "hurt."[11] Because the officer conceded he felt no pain, we focused on whether there was an "impairment of physical condition." In reversing the defendant's assault conviction, we explained that "the two harms were so de minimis that they did not satisfy the statutory definition of `physical injury.'"[12] We specifically noted that there was "no evidence that the scratches caused any continuing discomfort or limited his use of his knee."
12. Unlike Harris, the record here contains evidence that Beth was physically injured. At trial, Beth testified that Mumitt took her into her bedroom, stripped her naked, and beat her with a belt. Barbara was in the adjoining room and heard Beth crying. After the beating, Harmon tapped Beth on her buttocks. Beth told Harmon that her buttocks were sore because of the beating she had received from Mumitt. Taken in the light most favorable to the prosecution, a rational trier of fact could infer from these facts that Beth suffered "substantial pain" as a result of Mumitt's conduct. Beth "did not need to say the specific statutory words `substantial pain' ... for the jury to make that inference."[13] Accordingly, the trial judge properly ruled that the evidence was sufficient to submit the Assault in the Third Degree charge to the jury for decision.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Mumitt was also convicted of other various sex offenses, Endangering the Welfare of a Child, Terroristic Threatening, Noncompliance with Condition of Bond, and Offensive Touching, but has not appealed from those convictions.
[2] The parties have assigned pseudonyms to the two complainants.
[3] At the close of the testimonial phase of the trial, the trial judge went through the indictment count by count, eliminating those counts for which insufficient evidence had been presented. As to the assault charge, the judge ruled that there was sufficient evidence of substantial pain to establish the physical injury element of the offense.
[4] Comer v. State, 977 A.2d 334, 343 (Del. 2009); Pennewell v. State, 977 A.2d 800, 801 (Del. 2009); Brown v. State, 967 A.2d 1250, 1252 (Del. 2009); Jackson v. Virginia, 443 U.S. 307, 319 (1979).
[5] Skinner v. State, 575 A.2d 1108, 1121 (Del. 1990).
[6] 11 Del. C. § 611(1).
[7] 11 Del. C. § 222(24).
[8] Harris v. State, 965 A.2d 691, 694 (Del. 2009) (quoting State v. Higgins, 998 P.2d 222, 224 (Ore. Ct. App. 2000)).
[9] 11 Del. C. § 221(c).
[10] 965 A.2d at 694.
[11] Id.
[12] Id.
[13] Binaird v. State, 967 A.2d 1256, 1260 (Del. 2009).