IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TROY WILLIAMSON, | § | |
| | § | No. 228, 2014 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and for |
| STATE OF DELAWARE, | § | New Castle County |
| | § | |
| Plaintiff Below, | § | Cr. I.D. No. 1306022407 |
| Appellee. | § | |

Submitted: February 18, 2015
Decided: March 23, 2015

Before **STRINE**, Chief Justice, **HOLLAND** and **VALIHURA**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Bernard J. O'Donnell, Esquire, Wilmington, Delaware, for Appellant.

Morgan T. Zurn, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for Appellee.

**VALIHURA**, Justice:

In this appeal, we consider what it means to suffer a "physical injury" as an element of the crime of Assault Second Degree against a law enforcement officer.

Defendant-below Troy Williamson ("Williamson") was arrested on June 25, 2013, and charged with offensive touching of a law enforcement officer. The misdemeanor offense was later upgraded, and he was indicted on September 3, 2013, for the felony offense of Assault Second Degree of a law enforcement officer. After a bench trial in March 2014, Williamson was convicted of Assault Second Degree[1] and was sentenced to four years of incarceration at Level V, suspended after two years for six months of Level IV supervision at the discretion of the Department of Correction, followed by one year of Level III probation. On appeal, Williamson argues that there was insufficient evidence concerning physical injury to a law enforcement officer to convict him of Assault Second Degree. He argues that the verdict should have been a finding of guilty of the lesser included offense of offensive touching of a law enforcement officer, 11 *Del. C.* § 601(c) – a Class A misdemeanor – rather than Assault Second Degree, which is a Class D felony. We disagree and for the reasons stated herein, we AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2013, Williamson, who had agreed in his plea agreement to cooperate in the prosecution of his codefendants for a series of pizza delivery

---

[1] 11 *Del. C.* § 612(a)(3).

1

robberies, reported to the Delaware Department of Justice ("DOJ"), and was brought into a conference room. Members of the DOJ, Ipek Medford ("Medford") and Jamie McCloskey ("McCloskey"), accompanied Detective Thomas Abram ("Abram") in prepping Williamson for the upcoming trial. Williamson appeared disinterested in reviewing his expected testimony and refused to answer questions. Instead, he put on his sunglasses and pretended to be sleeping. As a result of Williamson's behavior, Medford and McCloskey left the conference room. Abram followed, but returned to the room a short time later.

Williamson asked Abram if he was being detained. Abram responded that he did not know, but that if Williamson left, Williamson likely would be violating his probation. Williamson stood up with the transcript and his subpoena for the upcoming trial in his hands. Abram told Williamson that he could not leave with the transcript. Williamson then said, "f*** you, I'm leaving," and threw the transcript and subpoena at Abram. Abram picked up the subpoena and extended it to Williamson's chest. Williamson started throwing punches and Abram punched back. Williamson tried to grab hold of Abram's shirt, and pushed Abram into the corner of a table. Abram was eventually able to pin Williamson's face down into a

chair and yell for help. An officer then entered the room and helped Abram handcuff Williamson.[2]

As a result of the struggle, Abram sustained a bruise on the back of his left leg and pulled his left groin muscle. Abram testified that he did not go to the hospital or seek any medical treatment for his injuries. Abram further testified that he had to use his left arm to lift his leg up to get into his car. He testified that this lasted approximately four to six weeks. Abram also testified that he frequently went to the "Y" and that he "couldn't really do anything during [the four to six weeks after the struggle] because of the discomfort."

Before the judge rendered a verdict, Williamson asked the Superior Court "to find [him] not guilty, or, at most, [guilty of] offensive touching of a law enforcement officer." The thrust of Williamson's argument was that the State had not proved beyond a reasonable doubt that Williamson caused the police officer physical injury, and thus, there was insufficient evidence to conclude that Williamson committed Assault Second Degree against a law enforcement officer. The Superior Court indicated that before it reached a verdict, it would review prior cases concerning physical injury.

---

[2] We note that Williamson was a material witness and had agreed to testify at the trial of his codefendants. Further, this incident occurred within the Criminal Division of the Attorney General's Office in the busy State Office Building where Detective Abram and others were armed. Ultimately, Williamson was not called to testify in the trial because he was uncooperative.

However, Williamson did not ask the trial court to enter a judgment of acquittal. After the judge returned the verdict, Williamson did not challenge the sufficiency of the evidence for his conviction of Assault Second Degree. Further, Williamson failed to raise this issue in a post-trial motion for a judgment of acquittal. Accordingly, the parties also dispute what standard of review we apply when reviewing a claim for insufficiency of the evidence to convict in a bench trial where the defendant entered a plea of not guilty, but did not explicitly seek a judgment of acquittal.

## DISCUSSION

As for the threshold issue of which standard of review we should apply, it is well-settled that in a jury trial, if a defendant fails to make a motion for acquittal to the trial court, the defendant has failed to preserve the right to appeal the issue of the sufficiency of the evidence to convict, and we would apply the plain error standard of review.[3] The issue of what standard of review we apply here, where the substance of the issue of the sufficiency of the evidence was put before the trial court in a bench trial, but where no motion for a judgment of acquittal was made,

---

[3] *See* Del. Supr. Ct. R. 8. *See also Williams v. State*, 98 A.3d 917, 920 (Del. 2014) (citing *Turner v. State*, 5 A.3d 612, 615 (Del. 2010); *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995)); *Gordon v. State*, 604 A.2d 1367, 1368 (Del. 1992). Under the plain error standard of review, "[t]he error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." *Dougherty v. State*, 21 A.3d 1, 2 (Del. 2011) (quoting *Turner*, 5 A.3d at 615). Plain error is "limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." *Id.*

4

appears to be a question of first impression.  Superior Court Criminal Rule 29

governs motions for a judgment of acquittal.[4]  The analogous federal rule is

Federal Rule of Criminal Procedure 29.  Both rules, although worded differently,

contemplate that a court may, on its own, consider whether the evidence is

sufficient to sustain a conviction.[5]  Numerous federal appellate courts have held

that a plea of not guilty in a bench trial is tantamount to a motion for acquittal, and

accordingly, find that no waiver of the sufficiency of the evidence claim has

occurred.[6]  Although the better practice for the defense is to move for a judgment

of acquittal in a bench trial in order to preserve a challenge to the sufficiency of the

evidence, we hold, consistent with the majority of federal appellate courts that

---

[4] Del. Super. Ct. Crim. R. 29.

[5] *Compare* Del. Super. Ct. Crim. R. 29(a) ("The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses."), *with* Fed. R. Crim. P. 29(a) ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  The court may on its own consider whether the evidence is insufficient to sustain a conviction.").

[6] *See United States v. Orgovan*, 377 Fed.Appx. 227, 229 n.3 (3d Cir. 2010); *United States v. Grace*, 367 F.3d 29, 34 (1st Cir. 2004); *United States v. Hogan*, 89 F.3d 403, 404 (7th Cir. 1996) (citing *United States v. South*, 28 F.3d 619 (7th Cir. 1994); *United States v. Hon*, 306 F.2d 52, 54 (7th Cir. 1962)); *United States v. Cardenas*, 9 F.3d 1139, 1159 (5th Cir. 1993) (citing *United States v. Rosas-Fuentes*, 970 F.2d 1379, 1381 (5th Cir. 1992); *United States v. Pitts*, 428 F.2d 534, 535 (5th Cir. 1970), *cert. denied*, 400 U.S. 910 (1970)); *United States v. Atkinson*, 990 F.2d 501, 502-03 (9th Cir. 1993); *United States v. Besase*, 373 F.2d 120, 121 (6th Cir. 1967); *Hall v. United States*, 286 F.2d 676, 677 (5th Cir. 1960), *cert. denied*, 366 U.S. 910 (1961); *see also* Charles Alan Wright *et al.*, 2A Fed. Prac. & Proc. Crim. § 469 Appellate Review (4th ed. 2014) ("[After a bench trial,] it is held that the sufficiency of the evidence will be considered on appeal, even though there was no motion for acquittal, on the theory that 'the plea of not guilty asks the court for a judgment of acquittal, and a motion to the same end is not necessary.'" (internal citations omitted)).

have addressed this issue, that where the defendant has entered a plea of "not guilty" but fails to formally move for a judgment of acquittal in a bench trial, the issue of the sufficiency of the evidence will be reviewed the same as if there had been a formal motion for a judgment of acquittal.

Thus, we will review the claim here to determine "whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt."[7] This conclusion follows from the well-settled view that where there is no substantial evidence to support a conviction in a criminal case, it is the duty of the trial court to direct a verdict of acquittal, regardless of whether a motion to that effect is made.[8]

Turning to the merits of his appeal, Williamson argues that the evidence presented at trial did not establish "physical injury" as statutorily defined and, as a result, he should only have been convicted of the lesser included offense of offensive touching of a law enforcement officer. Ordinarily, Assault Second Degree requires "*serious* physical injury to another person"[9] or "physical injury to another person by means of a deadly weapon or dangerous instrument."[10]

---

[7] *Monroe*, 652 A.2d at 563 (quoting *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991)).

[8] *See Taylor v. State*, 827 A.2d 24, 28 (Del. 2003) (holding that the trial court committed reversible error when it failed to enter a judgment of acquittal *sua sponte* after the State conceded that the jury would "probably acquit" on four counts).

[9] 11 *Del. C.* § 612(a)(1) (emphasis added).

[10] 11 *Del. C.* § 612(a)(2).

However, where the assault is directed at a law-enforcement officer, only "physical injury" is required.[11] Delaware law defines physical injury as "impairment of physical condition or substantial pain."[12] The parties disagree about the application of this definition to the facts of the case.

This Court has held that 11 *Del. C.* § 222(23) does not require the victim to seek medical treatment in order to establish physical injury.[13] Thus, Abram's failure to seek medical treatment does not bar a conviction of Williamson for Assault Second Degree. Additionally, this Court has held that the "victim's testimony concerning the extent of [his or her] physical injuries [is] sufficient by itself" to establish a conviction.[14] Accordingly, Abram's testimony regarding his injuries is sufficient to convict Williamson, if this Court finds that the injuries rise to the level of "impairment of physical condition or substantial pain."[15]

This Court has defined "impairment of physical condition" to mean "harm to the body that results in a reduction in one's ability to use the body or a bodily

---

[11] 11 *Del. C.* § 612(a)(3) ("A person is guilty of assault in the second degree when: . . . The person intentionally causes *physical injury* to a law-enforcement officer . . . who is acting in the lawful performance of duty." (emphasis added)).

[12] 11 *Del. C.* § 222(23).

[13] *King v. State*, 2007 WL 2949146, at *3 (Del. Oct. 11, 2007) ("Although 'physical injury' requires a 'physical impairment or substantial injury,' the statute does not require confirmation through medical treatment.").

[14] *McKnight v. State*, 753 A.2d 436, 438 (Del. 2000) (quoting *Snowden v. State*, 1995 WL 478370 (Del. Aug. 10, 1995)); *Davis v. State*, 1999 WL 86055 (Del. Jan. 20, 1999) (finding sufficient evidence to support a jury's finding that defendant was guilty of second degree assault where the only evidence presented was that of the complainant-victim).

[15] *See* 11 *Del. C.* § 222(23).

organ."[16] This Court has not defined the term "substantial pain," but has "concluded that the term should be given 'its commonly accepted meaning.'"[17] Further, we have held that the victim need not "say the specific statutory words 'substantial pain'" to meet the standard.[18] A review of this Court's decisions in this area convinces us that the State has established beyond a reasonable doubt that Abram suffered "physical injury" within the meaning of the statute.

To illustrate, in *Davis v. State*, the defendant kicked a police officer underneath the ribs and was charged with Assault Second Degree.[19] The kick knocked the wind out of the officer and caused "an immediate sharp pain" under his ribs.[20] The area became "inflamed and it reddened, and by the end of the day it was showing bruising."[21] Although the officer did not seek medical treatment and did not miss any time from work, he experienced pain and bruising for approximately one month after the incident and general tenderness for several

---

[16] *Harris v. State*, 965 A.2d 691, 694 (Del. 2009) (applying the Oregon Court of Appeals' interpretation of the same statutory language).

[17] *Mumitt v. State*, 2009 WL 3191709, at *2 (Del. 2009) (citing 11 *Del. C.* § 221(c)).

[18] *Id.* at *3.

[19] *Davis v. State*, 1999 WL 86055 (Del. Jan. 20, 1999).

[20] *Id.* at *1.

[21] *Id.*

months.  This Court held that the evidence was sufficient to establish physical injury.[22]

In *Walker v. State*, a police officer intervened in a conflict among inmates at the Sussex County Violation of Probation Center and was struck in the face.[23]  The officer suffered abrasions, cuts, and scratches on his face, hands, and neck, which caused swelling and redness.  He did not leave work at the time, but went to the hospital later and got a tetanus shot and had the cuts cleaned out.  The officer testified that he took Tylenol for a few days after the incident.[24]  This Court held that although the injuries were not serious, they required medical treatment to avoid infection and control the pain, and therefore, the injuries were sufficient to satisfy the definition of physical injury.[25]

---

[22] The Superior Court addressed a similar situation involving the question of whether a defendant's actions caused a "physical injury" in the context of Robbery First Degree under 11 *Del. C.* § 832(a)(1) in *McKnight v. State*.  In that case, the defendant punched a security guard in the face resulting in pain, abrasions and swelling to the security guard's jaw, but no bleeding.  The officer did not seek medical treatment and only took aspirin for the pain.  This Court affirmed the Superior Court's conclusion that the evidence supported a conviction of Robbery First Degree where in the course of committing Robbery Second Degree, he caused "physical injury to any person who is not a participant in the crime."  *McKnight*, 753 A.2d at 437.  In so holding, this Court observed that we have "held that bruised ribs and a bruised arm were sufficient evidence of physical injury to submit a charge of Robbery First Degree to a jury."  *Id.* at 438 (citing *Dunham v. State*, 497 A.2d 786 (Del. 1985)); *see also Handy v. State*, 1998 WL 15013 (Del. Jan. 13, 1998) (visible bruising that required two weeks to heal and testimony by a victim that she was "very sore" established "physical injury").

[23] *Walker v. State*, 2002 WL 229500 (Del. Feb. 11, 2002).

[24] *Id.* at *1.

[25] *Id.*

In *Raymond v. State,* this Court determined that the evidence relating to the charge of Assault Second Degree was sufficient to establish that the defendant intentionally caused physical injury to a law enforcement officer.[26] There, the officer suffered two broken bones in his hands as a result attempting to subdue the defendant.

In *Moye v. State,* this Court found the evidence sufficient to establish "physical injury" for three individuals.[27] There, the defendant punched a bus driver in the mouth and went back to his seat. A short time later, he returned and started punching the driver in the head. The driver used his shoulders to block the punches. The defendant "tussled" with a police officer, biting him on the arm.[28] That officer and another officer eventually handcuffed the defendant and transported him to the Wilmington Hospital. As a result of blocking the punches, the driver pinched a nerve. The driver also testified that he felt a "sharp pain" from the defendant's first punch.[29] He treated his injuries with medication and a heating pad, and missed a few days of work. This Court held that a reasonable jury could have concluded from this evidence that the driver "suffered substantial pain and/or that the pinched nerve reduced his ability to use his shoulder and arm," and that in

---

[26] *Raymond v. State*, 2007 WL 666778 (Del. Mar. 6, 2007).

[27] *Moye v. State*, 2010 WL 376872 (Del. Jan. 20, 2010).

[28] *Id.* at *1.

[29] *Id.*

either event, the evidence was sufficient to support a finding of physical injury.[30]

Although the officer did not realize he had been bitten at the time the bite occurred, this Court held that based upon the teeth marks and broken skin, the "jury could infer from this evidence that [the officer] suffered 'physical injury.'"[31] At the hospital, the defendant kicked a nurse in the arm, causing a large bruise that was "quite sore" for several days.[32] This Court noted that her injuries were "sufficient to support a finding of 'physical injury' based on 'substantial pain.'"[33]

However, in *Harris v. State*,[34] the evidence presented was insufficient to establish "physical injury." There, the defendant elbowed a police officer in the forehead, causing a red mark, and the officer suffered scratches on his knee during a scuffle with the defendant.[35] The officer testified that he treated his injuries by washing them off and applying Neosporin, but he did not seek medical attention. This Court concluded that the police officer's injuries were *de minimis*, and therefore, did not rise to the level of physical injury under the statute. In doing so, this Court noted that there was no evidence of bruising, swelling, or other "after

---

[30] *Id.*

[31] *Id.* at *2.

[32] *Id.* at *1-2.

[33] *Id.* at *2; *see also Slaton v. State*, 1996 WL 147619 (Del. Mar. 26, 1996) (victim sustained "serious physical injury" consisting of pulled ligaments and tendons in her arm which caused her to miss approximately three weeks of work).

[34] 965 A.2d 691 (Del. 2009).

[35] *Id.* at 693.

effects" that impaired the officer's physical condition or caused any continuing discomfort or limited use of his body.[36]  Further, there was no evidence "that the scratches caused any continuing discomfort or limited the use of his knee."[37]  As to whether there was evidence of "substantial pain," the police officer felt a "jarring sensation" when he was elbowed in the forehead, but testified that he did not feel any pain.[38]  He also testified that his scraped knee hurt.[39]  Based upon that evidence, this Court concluded that there was no "substantial pain."[40]

Abram's injuries are more akin to those described in *Davis*, *Walker*, *Raymond*, and *Moye* than those in *Harris*.  Here, Abram was pushed into a corner of a table and unlike the situation in *Harris*, Abram suffered physical effects, namely, the bruising of his leg and the pulling of his left groin that caused him some limitations in the movement of his leg for four to six weeks.[41]  Accordingly, Abram's injuries were sufficient to satisfy a showing of impairment of physical condition.

---

[36] *Id.*

[37] *Id.*

[38] *Id.* at 694.

[39] *Id.*

[40] *Id.*

[41] S*ee Binaird v. State*, 967 A.2d 1256 (Del. 2009) (holding that an abrasion on the victim's arm supported a finding of physical injury after the victim testified that the abrasion was painful and that he had to clean and wrap it).

## CONCLUSION

Based upon the foregoing, the judgment of the Superior Court is hereby
AFFIRMED.