IN THE SUPREME COURT OF THE STATE OF DELAWARE

KEVIN BRITT, §
§ No. 435, 2014
    Defendant Below- §
    Appellant, § Court Below: Superior Court
§ of the State of Delaware in and
    v. § for New Castle County
§
STATE OF DELAWARE, § No. 1306000818
§
    Plaintiff Below- §
    Appellee. §

Submitted: April 22, 2015
Decided: April 28, 2015

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

## *O R D E R*

On this 28th day of April 2015, it appears to the Court that:

(1) Defendant-below/Appellant Kevin Britt appeals from a Superior Court conviction of three counts of First Degree Reckless Endangering, three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Carrying a Concealed Deadly Weapon ("CCDW"). Britt raises one claim on appeal. Britt argues that the State failed to present sufficient evidence to establish beyond a reasonable doubt that he was guilty of one of the three counts of Reckless Endangering of which he was convicted. We find no merit to this claim and affirm.

1

(2) On June 1, 2013, Rene Jamison was living in a residence on Concord Avenue in New Castle County with her father, Joseph Custis, and her eight children: Jhireique Sutherland ("Sutherland") - age 20; Jhaquez Toston ("Toston") - age 18; Andre - age 15; Abu - age 13; Angelo, Jr. - age 6; Angelina Warner - age 5; Angelow - age 5; and Angelino - age 3. That day, Britt knocked on the front door of the home and asked five-year-old Angelina, "Where's your brother?".[1] When Angelina asked Britt which of her brothers he was looking for, he replied, "Any of them."[2] Angelina told Britt that her brother Toston was in the shower. Britt replied, "[T]ell him to come here; I'm not playing," and said that he "got a strap," meaning that he had a gun.[3] Angelina closed the door and Britt left.

(3) Sutherland was in his bedroom to the side of the front door and could see and hear the exchange between Angelina and Britt through a window. Sutherland testified that he saw what he believed to be a gun in Britt's pocket, and that Britt was wearing a blue or grey t-shirt over a long-sleeved thermal shirt. Approximately twenty minutes later, Britt returned and knocked loudly on the door. When Jamison opened the door slightly, Britt covered his face, pulled a gun out of his pants, and reached the gun into the house. Jamison slammed the door shut, but caught Britt's

---

[1] Appellant's Op. Br. App. at A27.
[2] Appellant's Op. Br. App. at A40.
[3] Appellant's Op. Br. App. at A28.

2

wrist between the door and the doorframe.

(4) As Jamison struggled to keep the door closed she yelled, "My babies are in here," but Britt continued pointing his gun at Jamison and yelled at her to get off the door.[4] During the struggle, a single shot was discharged from the gun. The bullet struck and damaged some molding near the front door. At the time of the gunshot, Angelino was asleep on Jamison's bed, Custis was in the basement, Toston and Angelo, Jr. were upstairs in Toston's room, Angelow and Sutherland were either inside or in front of Sutherland's room on the ground floor, and Angelina was crying at the top of the stairway leading from the front doorway to the second floor.

(5) After several minutes of trying to keep the door closed, Jamison finally let go and ran out the back door with Angelow and Angelina. Britt then fled the scene. Jamison called 9-1-1 and Wilmington police responded. Detective Malcolm Stoddard took Sutherland in the back of his unmarked police car to look for a possible suspect in the area of 23rd and West Street, where Sutherland said he had seen the shooter in the past. Sutherland spotted Britt among a group of people in the area and identified him as the shooter. Britt was then taken into custody.

(6) At the time of his arrest, Britt was wearing a grey t-shirt over a white, long-sleeve thermal shirt, and police found a blue t-shirt on the ground nearby. Police

---

[4] Appellant's Op. Br. App. at A41.

also recovered a revolver from the backyard of a nearby home. The revolver contained six live rounds and one spent casing. DNA swabs from the revolver matched Britt's DNA profile and one other unknown contributor. Forensic testing also showed the presence of gunshot residue on both of Britt's hands.

(7) At the conclusion of a two-day bench trial, the Superior Court found Britt guilty of three counts of Reckless Endangering, three counts of PFDCF, and CCDW. The trial court acquitted Britt of the following charges: Home Invasion, three counts of Reckless Endangering, and four counts of PFDCF. On August 1, 2014, the Superior Court sentenced Britt to a total of thirty-two years incarceration at Level V, followed by various levels of concurrent probation. This appeal followed.

(8) "[I]t is well-settled that in a jury trial, if a defendant fails to make a motion for acquittal to the trial court, the defendant has failed to preserve the right to appeal the issue of the sufficiency of the evidence to convict, and we would apply the plain error standard of review."[5] Although Britt failed to make a motion for acquittal in the proceedings below, we have recently held that "where the defendant has entered a plea of 'not guilty' but fails to formally move for a judgment of acquittal in a bench trial, the issue of the sufficiency of the evidence will be reviewed the same as if there

_____

[5] *Williamson v. State*, 2015 WL 1324351, at *2 (Del. Mar. 23, 2015).

4

had been a formal motion for a judgment of acquittal."[6]  Thus, we will review Britt's claim to determine "'whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the] defendant guilty beyond a reasonable doubt.'"[7]

(9) "A person is guilty of reckless endangering in the first degree when the person recklessly engages in conduct which creates a substantial risk of death to another person."[8]  A person acts recklessly for the purposes of First Degree Reckless Endangering "when the person is aware of and consciously disregards a substantial and unjustifiable risk that [death] . . . will result from the conduct."[9]  "The risk must be of such a nature and degree that disregard therof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[10]

(10) Britt argues that there was insufficient evidence to justify his conviction of Reckless Endangering as to Toston.[11]  Specifically, he argues that the trial court's acquittal as to the Custis Reckless Endangering charge was "factually, logically and

---

[6] *Id.*

[7] *Monroe v. State*, 652 A.2d 560, 563 (Del.1995) (quoting *Robertson v. State*, 596 A.2d 1345, 1355 (Del.1991)).

[8] 11 *Del. C.* § 604.

[9] 11 *Del. C.* § 231(e).

[10] *Id.*

[11] Britt does not contest his Reckless Endangering convictions with respect to Jamison or Angelina.

legally inconsistent" with its conviction as to Toston.[12]  In essence, Britt argues that because the State did not establish the penetrating power of the bullet he fired, it also failed to establish that he engaged in conduct that created a substantial risk of death to Toston.

(11) Britt's argument is without merit.  "'Substantial risk of death' is not defined in the Delaware Criminal Code, but is accorded 'its commonly accepted meaning.'"[13] Our precedent provides ample support for Britt's conviction of Reckless Endangering as to Toston.  For example, we have found sufficient evidence of a substantial risk of death where the defendant merely pointed, but did not fire, a loaded weapon at another person.[14]  We have also held that firing a gun on the streets of a residential area is sufficient evidence of a substantial risk of death notwithstanding the defendant's argument that "the only potential victims were inside their homes."[15] Additionally, we have found that possible bullet fragmentation or ricochet is sufficient evidence to warrant a finding of a substantial risk of death as to an unintended victim located in the close vicinity of a shooting.[16] Lastly, we have found

---

[12] Appellant's Op. Br. at 6.
[13] *Eaton v. State*, 2000 WL 628330, at \*2 (Del. Apr. 28, 2000) (quoting11 *Del. C.* § 221(c)).
[14] *Thornton v. State*, 1994 WL 267300, at \*2 (Del. June 9, 1994).
[15] *White v. State*, 2014 WL 637050, at \*1 (Del. Feb. 6, 2014); *see also Hassan-El v. State*, 2004 WL 220322, at \*2 (Del. Jan. 23, 2004) (finding that a defendant's firing of a gun in a residential neighborhood was sufficient evidence to prove First Degree Reckless Endangering).
[16] *Tice v. State*, 624 A.2d 399, 404 (Del. 1993).

sufficient evidence of a substantial risk of death where the defendant fired his gun through the door of an apartment in which he knew two individuals were located.[17]

(12) The State's evidence in this case showed that Britt knew that Toston was somewhere inside the house when he fired the gun through the front doorway. When Britt fired the gun, he created a situation in which the bullet could directly, or by fragmentation or ricochet, seriously injure or kill Toston, regardless of Toston's exact location within the house. Britt consciously disregarded that risk, and a rational trier of fact, viewing the evidence in the light most favorable to the State, could have so concluded.

(13) Moreover, Britt's claim that the trial court's acquittal on the Custis charge of Reckless Endangering was inconsistent with its conviction as to the Toston charge of Reckless Endangering is unpersuasive. Here, Britt was unaware of Custis' presence within the house when he fired the gun. Thus, the trial court found that Britt did not have the necessary *mens rea* for a conviction of First Degree Reckless Endangering as to Custis. Conversely, the State's evidence in this case showed that Britt knew Toston was somewhere inside the house when he fired the gun through the front doorway. Thus, Britt had the requisite *mens rea* as to Toston. Accordingly, the trial court did not err by failing to *sua sponte* acquit Britt of the Toston Reckless

_____

[17] *Bryant v. State*, 2004 WL 2830900, at *1 (Del. Nov. 30, 2004).

7

Endangering charge.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is **AFFIRMED**.

BY THE COURT:

/s/ James T. Vaughn Jr.
Justice

8