IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THEODORE THOMPSON, | § | |
| | § | No. 47, 2015 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | in and for Sussex County |
| | § | |
| STATE OF DELAWARE | § | Cr. ID No. 1407001729 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 9, 2015
Decided: December 14, 2015

Before **HOLLAND, VAUGHN,** and **SEITZ**, Justices.

## ORDER

This 14th day of December, 2015, it appears to the Court that:

(1)   A Superior Court jury convicted Theodore Thompson of child abuse second degree and endangering the welfare of a child for smacking his eight-month old daughter in the face. He appeals on two grounds. First, Thompson argues that because the State used the same set of facts to convict him of both crimes, his sentences should merge. Second, he argues that because the State provided no testimony from a medical expert about whether the child experienced physical injury, and the child is an infant unable to testify about whether she felt pain, he

should have been acquitted. Because Thompson's arguments are without merit, we affirm.

(2) On the evening of July 2, 2014, Mary Anemone went to the store. She left her eight-month old daughter with her mother and her live-in boyfriend, Theodore Thompson. Anemone's mother stayed in her bedroom while Thompson stayed in Anemone's bedroom with the infant. Anemone's mother heard the baby crying and screaming. Anemone also heard the baby screaming from the garage when she returned from the store approximately twenty minutes later. Thompson left the house five minutes after Anemone arrived.

(3) After turning on the light in her bedroom, Anemone discovered that her daughter had a large red mark on her face in the shape of a handprint. The handprint was not there before she left for the store. Anemone called family members and the police. Corporal Eric Glasco arrived at Anemone's home about twenty minutes after she called the police. Corporal Glasco also noticed the handprint on the baby's face. The police arrested Thompson a few hours later.

(4) At trial, Thompson acknowledged the mark on the baby's face, but said that the baby fell inside the crib and had been crying loudly. He also said he did not believe the child suffered physical injury. At the conclusion of the State's case, the defense moved for a judgment of acquittal on the ground that the State did not prove the child suffered physical injury because no medical professional

was called to explain how the marks were caused or whether the marks on the child's face were evidence of physical injury. The Superior Court denied the motion. Thompson then moved for judgment of acquittal on the endangering the welfare of a child charge, arguing that it merged into the child abuse charge. The court denied Thompson's motion because the crimes contained distinct elements.

(5) The jury convicted Thompson of child abuse second degree and endangering the welfare of the child. The trial judge sentenced him to two years at Level V with no probation to follow and one year at Level V, suspended after thirty days for eleven months Level III probation.

(6) Thompson makes two arguments on appeal. First, Thompson argues that his sentences for endangering the welfare of a child and child abuse second degree violate the constitutional prohibition against double jeopardy because he was punished under two statutes for committing a single act. He argues that because the injury was caused by the same defendant, affected the same victim, and occurred on the same day, his sentences should merge. The State submits that the crimes contained distinct elements and thus should not merge. We review claims of constitutional violations *de novo*.[1]

(7) The Fifth Amendment to the United States Constitution and Article I, § VIII of the Delaware Constitution prohibit the imposition of more than one

---

[1] *Panuski v. State*, 41 A.3d 416, 419 (Del. 2012).

punishment for the same offense.[2]  This includes protection from multiple charges under separate statutes that require proof of the same factual elements.[3] "Generally, multiple punishments are not imposed for two offenses arising out of the same occurrence unless each offense requires proof of a fact which the other does not."[4]  If it is clear the legislature intended to impose more than one penalty for acts constituting multiple crimes, the guarantee against double jeopardy does not prohibit multiple punishments against a convicted person.[5]  Thus, the inquiry is one of statutory construction and whether the legislature intended to impose multiple punishments for the same conduct,[6] not simply whether the same actors are involved in the same incident.

(8)     In seeking to ascertain legislative intent, we look to 11 *Del. C.* § 206.[7] According to 11 *Del. C.* § 206, a defendant may be convicted of more than one offense involving the same conduct so long as one offense is not a lesser-included offense of the other.[8]  In order "to be an included offense, all the elements of the

---

[2] *Johnson v. State*, 5 A.3d 617, 620 (Del. 2010).
[3] *Spencer v. State*, 868 A.2d 821, 822 (Del. 2005).
[4] *Poteat v. State*, 840 A.2d 599, 603 (Del. 2003) (internal citation omitted).
[5] *Johnson*, 5 A.3d at 620.
[6] *Nance v. State*, 903 A.2d 283, 286 (Del. 2006).
[7] *Poteat*, 840 A.2d at 604.
[8] An offense is a lesser included if:
    (1) It is established by the proof of the same or less than all the facts required to establish the commission of the offense charged; or
    (2) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

lesser offense must be contained in the greater offense—the greater containing certain elements not contained in the lesser."[9]

(9) Here, child abuse second degree and endangering the welfare of a child each require proof of a fact that the other does not. To convict Thompson of second degree child abuse, the State had to prove that he (a) intentionally or recklessly; (b) caused physical injury; (c) to a child under the age of three.[10] To convict him of endangering the welfare of a child, the State had to prove: (a) he was a parent, guardian, or other person who has assumed responsibility for the care of the child; (b) who intentionally, knowingly, or recklessly; (c) acted in a manner likely to be injurious to the physical, mental or moral welfare; (d) of a child under the age of 18.[11]

(10) A plain reading of the statutes shows that the crimes are distinct. The crime of endangering the welfare of a child requires the State to prove that a person with responsibility for the child acted in a way likely to cause physical, mental, or moral injury to the child. The crime of child abuse second degree requires the State to prove that the child was under age three and that there was physical injury.

---

(3) It involves the same result but differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.
11 *Del. C.* § 206(b).
[9] *State v. Matthews*, 295 A.2d 745, 747 (Del. Super. 1972), *aff'd*, 310 A.2d 645 (Del. 1973).
[10] 11 *Del. C.* § 1103A.
[11] 11 *Del. C.* § 1102.

The presence of distinct elements in each offense means that neither can include all of the elements of the other.

(11) Thompson ignores this framework and relies on *Stroik v. State*[12] to support his contention that because the defendant, victim, and harm are the same, his multiple convictions cannot stand. In *Stroik*, two defendants argued their convictions for conspiracy to commit racketeering should merge with their convictions for racketeering.[13] This Court declined to apply the merger doctrine, and noted that "[m]erger of sentences is appropriate in cases where the victims of the two crimes for which the defendant is being sentenced are the same, and the harms occasioned by the two crimes are the same."[14] In *Stroik*, there were two separate crimes and resulting harms—racketeering *and* a conspiracy.[15] Thus, in *Stroik*, the crimes were distinct and the merger doctrine did not apply.

(12) Likewise, here, the crimes are distinct, and the harms they seek to remedy are distinct. *Stroik* does not change the rule that "[w]hen the same conduct of a defendant may establish the commission of more than [one] offense, the defendant may be prosecuted for each offense."[16] Nor does *Stroik* change the fact that an analysis under 11 *Del. C.* § 206 is the correct one. Endangering the welfare of a child targets parents who act in a manner likely to harm children in their care.

---

[12] 671 A.2d 1335, 1344 (Del. 1996).
[13] *Id.*
[14] *Id.*
[15] *Id.* at 1343-44.
[16] 11 *Del. C.* § 206(a).

6

In contrast, second degree child abuse targets any individuals who actually cause physical injury to very young children. Because the crimes are distinct, and *Stroik* is inapposite, Thompson's argument is without merit.

(13) Thompson next argues that under the child abuse statute, the State must prove that Thompson caused physical injury to the child, which means "any impairment of physical condition or pain."[17] According to Thompson, the State's failure to submit medical testimony to prove the infant was injured or how the injury was caused should have led to his acquittal, because an infant cannot testify about pain. The State asserts in response that there was sufficient lay witness testimony and photographic evidence to prove physical injury from a slap to an infant's face. The scope of our review for claims of insufficient evidence is "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the] defendant guilty beyond a reasonable doubt."[18]

(14) Though it may have been better for the State to present medical evidence that the child suffered physical injury, this Court held in *Williamson v. State* that the victim need not seek medical treatment to establish physical injury.[19] In *Williamson*, the victim's testimony about his injuries was sufficient to prove physical injury. Thompson argues that under *Williamson*, if a victim is unable to

---

[17] 11 *Del. C.* § 1100(5).

[18] *Williamson v. State*, 113 A.3d 155, 158 (Del. 2015) (quoting *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995)).

[19] *Williamson*, 113 A.3d at 159.

7

testify about his injuries, then medical testimony is necessary. But our holding in *Williamson* did not require any particular type of evidence to prove physical injury.[20] An infant victim cannot possibly testify about its pain, and thus a rule requiring victim testimony in all cases would set a higher burden for the State to prove injury in the case of infant[21] victims than is imposed upon adult victims. Rather, in the case of infant victims, physical injury can be proven by sufficient circumstantial evidence.[22]

(15) In this case, the State presented ample circumstantial evidence. After being left alone with Thompson, the child had a red mark in the distinct shape of a handprint on her face. It was large, lasted several days, and extended all the way to the infant's hairline. Anemone, Anemone's mother, Corporal Glasco, and even Thompson testified that the mark resembled a handprint. A photograph showed that the mark took at least five days to go away. Anemone and her mother also testified that although the baby could be fussy at times, she was screaming in a manner they had never heard before. Moreover, the baby did not have the mark on her face before Anemone left for the store. Although Anemone's mother was home at the time of the incident, the baby was solely in Thompson's care. Finally,

---

[20] *Id.*

[21] This would include any victim who is unable to testify about pain such as a mute person, an unconscious person, and the like.

[22] *See Parisi v. State*, 2015 WL 7068343, at *3 (Del. Nov. 12, 2015) ("Though his conviction relies almost entirely on circumstantial evidence, 'Delaware law allows the State to convict an individual solely on circumstantial evidence. We treat circumstantial evidence the same as testimonial evidence, and draw inferences from that evidence.'") (quoting *Vincent v. State,* 996 A.2d 777, 779 (Del. 2010)).

the only explanation that Thompson provided regarding the cause of the mark was that the infant fell inside of the crib.

(16) Viewing this evidence in the light most favorable to the State, a jury could have concluded beyond a reasonable doubt that Thompson committed child abuse. Because the Superior Court committed no legal error and the State presented sufficient evidence so that a rational fact finder could find Thompson guilty beyond a reasonable doubt, we affirm.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice