# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

v.

ARTHUR CARTER,

Defendant.

ID No. 1306020689

## OPINION

Date Submitted: October 19, 2016
Date Decided: January 18, 2017

*Upon Defendant's Amended Motion for Postconviction Relief:* **DENIED.**

Matthew C. Buckworth, Esquire, and Patrick J. Collins, Esquire, Collins & Associates, Wilmington, DE. Attorneys for Defendant Arthur Carter.

Kelly Hicks Sheridan, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE. Attorney for the State.

**Jurden, P.J.**

## INTRODUCTION

Before the Court is Defendant Arthur Carter's Amended Motion for Postconviction Relief,[1] the Affidavits of Trial Counsel and Appellate Counsel,[2] the State's Response,[3] and Defendant's Reply.[4] For the following reasons, the Amended Motion is **DENIED.**

## BACKGROUND

On June 22, 2013, Defendant Arthur Carter got into an argument with his pregnant girlfriend, Morlicea Capers ("Capers").[5] Following the argument, Capers' uncle pushed Defendant out of the residence, whereupon Defendant fired a gun into the air and sped off in a silver car.[6] At the time Defendant fired the gun, he was a person prohibited by law from possessing a firearm due to a prior conviction.[7]

On January 7, 2014, Defendant was brought to trial on charges of Aggravated Menacing, Possession of a Firearm During the Commission of the Felony ("PFDCF"), and Possession of a Firearm by a Person Prohibited

---

[1] D.I. 64.
[2] D.I. 70 (Affidavit of Appellate Counsel attached as Exhibit C).
[3] D.I. 71.
[4] D.I. 72.
[5] *Carter v. State*, 105 A.3d 988, 2014 WL 7010032, at *1 (Del. Nov. 12, 2014) (TABLE) (describing the version of events fairly established by the State's evidence at trial).
[6] *Id.*
[7] D.I. 15.

2

("PFBPP").[8] The State presented the testimony of five witnesses: two neighborhood residents; a police officer who responded to Capers' 911 call; a custodian of 911 call records for New Castle County; and the detective who interviewed Defendant.

The first neighborhood resident testified to hearing an argument coming from the residence and to hearing gunshots soon thereafter.[9] The second neighborhood resident testified to hearing a single gunshot.[10]

The police officer who responded to Capers' 911 call testified he arrived at the scene within minutes after Capers called 911, Capers was "very excited, very upset, agitated," and she remained excited during the time the officer spoke with her.[11] Capers told the officer she had a dispute with Defendant that resulted in Defendant leaving the residence, returning to fire a gun into the air, and then fleeing in a silver vehicle.[12]

The 911 custodian testified that two 911 calls were made regarding the incident.[13] The first call was made by Capers; the second, by a child inside the house. The Court granted the State permission to begin playing Capers' 911 call to

---

[8] Defendant was indicted on several more charges, but prior to trial, the State entered a *nolle prosequi* on some charges, and after the close of State's case, the State entered a *nolle prosequi* on the charge of Terroristic Threatening. D.I. 51 ("Trial Tr.") at 68:1–10.

[9] Trial Tr. at 19:10–20:9.

[10] *Id.* at 26:4–23.

[11] *Id.* at 38:8–21, 39:1–6.

[12] *Id.* at 39:7–15.

[13] *Id.* at 48:1–49:6.

the jury based on the State's proffer.[14] After hearing a portion of the 911 call, the Court stopped the recording for a brief recess, and the jury left the courtroom.[15]

During the recess, the Court held a discussion with the State and Defendant's trial counsel regarding the admissibility of the 911 call.[16] The Court found that the portion of Capers' 911 call that was played for the jury qualified as an excited utterance under Delaware Rule of Evidence ("D.R.E.") 803(2) and, in accordance with *Dixon v. State*,[17] was non-testimonial such that its admission did not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution.[18] The remainder of Capers' 911 call was not played for the jury.

Before the jury returned to the courtroom, the Court listened to the 911 call made by a child inside the residence and found the call admissible.[19] The jury returned to the courtroom, and the child's call was played to the jury.[20]

The detective who interviewed Defendant testified that Defendant provided three different accounts of what occurred during his interview.[21] In all three accounts, Defendant admitted to having a verbal dispute with Capers and that

---

[14] *Id.* at 34:14–23, 49:2–6
[15] *Id.* at 49:10–16.
[16] *Id.* at 49:18–51:16.
[17] 996 A.2d 1271 (Del. 2010).
[18] Trial Tr. at 51:22–52:18.
[19] *Id.* at 54:7–10.
[20] *Id.* at 55:8–12.
[21] *Id.* at 61:10–21.

4

Capers' uncle pushed Defendant out of the residence.[22] However, in the first account, Defendant stated that he heard a gunshot after being pushed out of the residence but did not know its point of origin. In the second account, Defendant stated that, after being pushed out of the residence, he saw a friend of his accompanied by an unknown male and that the unknown male fired a shot into the air. In the third and final account, Defendant stated that the first two accounts were untrue and that he fired a shot into the air after being pushed out of the residence.

Following the detective's summation of Defendant's interview, the State played a recording of the interview for the jury.[23] The detective's recounting of the substance of the interview was intended to clarify the recording which was heavily redacted in order to remove references to a companion case.[24]

Finally, rather than the State introducing potentially prejudicial evidence of Defendant's prior conviction to prove the PFBPP charge, the parties stipulated that Defendant was a person prohibited from possessing a firearm.[25] The stipulation stated only that Defendant is prohibited from possessing a firearm; it did not indicate why.

---

[22] *Id.* at 61:10–62:21.
[23] *Id.* at 63:7–16.
[24] *Id.* at 57:9–58:3.
[25] D.I. 15.

5

Capers did not testify at trial.[26] At the close of the State's case, Defendant moved for a judgment of acquittal on the charge of Aggravated Menacing and the companion charge of PFDCF on the basis that the State did not produce sufficient evidence that Capers, the victim of the Aggravated Menacing charge, was actually in fear of imminent physical injury.[27] In response, the State asserted that it met its burden of proof through circumstantial evidence, consisting of Capers' statements during the 911 call and the testimony of the police officer who responded to the 911 call.[28] The Court denied Defendant's motion for judgment of acquittal.[29]

Defendant did not testify and called no witnesses.[30] During closing argument, defense counsel, *inter alia*, challenged the State's case by highlighting the State's failure to produce Capers as a witness at trial.[31] Defense counsel questioned why the State would rely on Capers' 911 call—rather than her live testimony subject to cross examination—as evidence that she was placed in fear of imminent physical injury.[32]

---

[26] A subpoena was issued, but was returned *non est inventus* by the sheriff. D.I. 21.
[27] Trial Tr. at 69:14–70:1; 11 *Del. C.* § 602(b) ("A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury.").
[28] Trial Tr. at 70:2–71:10.
[29] *Id.* at 71:11–15.
[30] *Id.* at 68:12–69:10.
[31] *Id.* at 80:1–14.
[32] *Id.* at 80:20–81:2.

6

The jury found Defendant guilty of all charges,[33] and on April 11, 2014, Defendant was sentenced.[34]

On direct appeal, Defendant's appellate counsel filed a brief and motion to withdraw under Supreme Court Rule 26(c), asserting that there were no arguably appealable issues. In response, Defendant raised four arguments *pro se*: (1) "the State violated his Sixth Amendment right to confront a witness against him when it failed to call the victim to testify;" (2) "the State's evidence was insufficient to establish his guilt on the charge of PFDCF because there was no gun or shell casing or other physical evidence admitted at trial;" (3) "the admission into evidence of his taped interview with the police violated his due process rights because his statement was not knowing and voluntary because he was intoxicated;" and (4) "the State violated *Brady v. Maryland* when it failed to disclose that the victim had written two letters recanting her prior statement to the police."[35]

On November 12, 2014, the Delaware Supreme Court affirmed the judgment of conviction.[36]

On January 6, 2015, Defendant submitted a Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61.[37] Counsel was appointed, and

---

[33] Trial Tr. at 105:18–106:19.
[34] D.I. 44.
[35] *Carter*, 2014 WL 7010032, at *1.
[36] D.I. 54;
[37] D.I. 55.

Defendant thereafter submitted an Amended Motion for Postconviction Relief.[38] Defendant alleges five grounds for relief: (1) trial counsel was ineffective for stipulating that Defendant was a person prohibited at the time the offense occurred; (2) trial counsel was ineffective for failing to file a motion *in limine* to exclude the 911 calls; (3) trial counsel was ineffective for not contacting Capers as a possible defense witness; (4) trial counsel was ineffective for failing to object to hearsay statements introduced through the police officer who responded to the scene; and (5) appellate counsel was ineffective for failing to raise claims on appeal that were preserved by trial counsel.[39]

## STANDARD OF REVIEW

Motions for postconviction relief are governed by Superior Court Criminal Rule 61. Rule 61(i) bars relief on any ground for postconviction relief that: (1) was not timely filed; (2) was not asserted in prior postconviction motions; (3) was not asserted in the proceedings leading to the judgment of conviction; or (4) was previously adjudicated. Claims of ineffective assistance of counsel generally cannot be brought at trial or on direct appeal and, therefore, generally are not procedurally barred by Rule 61(i)(3).[40]

---

[38] D.I. 64.

[39] *Id.* at 20–40.

[40] *Sahin v. State*, 7 A.3d 450, 451 (Del. 2010) ("Generally, we do not consider claims of ineffective assistance of counsel in a direct appeal. The reason for that practice, in part, is to develop a record on that issue in a Superior Court Rule 61 post-conviction proceeding.").

This is Defendant's first Rule 61 motion, it was timely filed, and it concerns only claims of ineffective assistance of counsel. Consideration of the merits is not barred by Rule 61(i)(1)–(4) except as discussed below in relation to Ground Two.

## DISCUSSION

Claims of ineffective assistance of counsel are governed by the *Strickland v. Washington* two-prong test.[41] To establish a claim of ineffective assistance of counsel under *Strickland*, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) prejudice, meaning that, but for counsel's unprofessional errors, there is a reasonable probability the result of the proceeding would have been different.[42]

**Ground One**

In his first ground for relief, Defendant asserts that trial counsel provided ineffective assistance when trial counsel stipulated to Defendant's status as a person prohibited from possessing a firearm and that, as a result, Defendant suffered constitutional prejudice.[43] In support of this assertion, Defendant argues that trial counsel should have moved to sever the PFBPP charge and have it tried separately from the Aggravated Menacing and PFDCF charges in order to minimize prejudice to Defendant based on his status as a person prohibited.

---

[41] 466 U.S. 668 (1984).
[42] *Id.* at 694.
[43] D.I. 64 at 20–23.

9

The record reflects that Defendant was not prejudiced by the joinder of Defendant's PFBPP charge with the Aggravated Menacing and PFDCF charges. Neither the stipulation of Defendant's status as a person prohibited nor the copy of the indictment included with the jury instructions indicate why Defendant was prohibited from possessing a firearm.[44] Further, the jury instructions on the PFBPP charge contain the following limiting instruction:

> The reason that the defendant is prohibited from owning or possessing a firearm is irrelevant to your deliberations in this case. You shall not speculate as to the reason why defendant is prohibited, nor consider that fact as evidence of guilt as to the other crimes alleged in the indictment.[45]

Consistent with that limiting instruction, the State never emphasized Defendant's status as a person prohibited to the jury. In its opening statement, after describing the events it intended to prove, the State summarized the charges alleged against Defendant:

> For this he stands before you charged with possessing that handgun in violation of the law, for aggravated menacing for displaying a deadly weapon in order to cause . . . fear of injury . . . and for possession of a firearm during the commission of a felony . . . .[46]

The State did not indicate why Defendant's possession of a handgun would violate the law, and neither the State nor Defendant's trial counsel made any other reference to the PFBPP charge until the State submitted the stipulation into

___

[44] D.I. 14, 15.
[45] D.I. 14.
[46] Trial Tr. at 6:23–7:7.

10

evidence at the close of its case. Thereafter, during closing argument, the State told the jury that the element of being a person prohibited was stipulated to without any further comment that might invite jury speculation.[47]

For the foregoing reasons, Defendant has not demonstrated that he was prejudiced by the joinder, and therefore, Defendant's ineffective assistance claim on this ground fails.[48]

**Ground Two**

In his second ground for relief, Defendant asserts that trial counsel provided ineffective assistance when trial counsel did not file a motion *in limine* to exclude: (1) the entirety of the 911 call made by the child; and (2) portions of the 911 call made by Capers that did not qualify as excited utterances.[49]

**A. The Child's 911 Call**

In support of his first argument, Defendant argues that the child's 911 call should have been excluded under D.R.E. 403 as unfairly prejudicial and cumulative because the child was audibly upset and because the information

---

[47] *Id.* at 73:74:6; *see Lewis v. State*, 144 A.3d 1109, 1116–17 (Del. 2016) ("[Defendant's] status as a person prohibited . . . was an element of the crime, the prosecutor could properly recite that stipulated fact in his closing argument. The prosecutor did not go beyond this permissible purpose in his closing. Likewise, reiterating that [defendant] had stipulated to one of the elements of the crime was not improper considering the court's duty to inform the jury of all of the elements of the crime.").

[48] *State v. Bacon*, 2005 WL 2303810, at *4 (Del. Super. Aug. 29, 2005), *aff'd*, 903 A.2d 322 (Del. 2006) (finding that the defendant was not prejudiced by a stipulation to his status as a person prohibited).

[49] D.I. 64 at 24–29.

11

provided by the child was largely duplicative of Capers' 911 call. Defendant maintains the child's 911 call "added no substance to the trial, but rather, only served to tug on the heartstrings of the jurors."[50]

On this issue, Defendant fails to substantiate that counsel provided ineffective assistance because Defendant's argument that the child's 911 call should have been excluded pursuant to D.R.E. 403 is without merit. D.R.E. 403 states: "Although relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."[51] In her 911 call, the child placed Defendant outside of the residence with a gun and stated that Defendant shot the gun. These statements are plainly relevant to core facts in the case. Thus, the child's statements were both highly probative and unlikely to confuse or mislead the jury.

As to Defendant's argument that the child's statements were excludable under D.R.E. 403 as cumulative, this argument lacks merit. Cumulative evidence is "[a]dditional or corroborative evidence to the same point. That which goes to

---

[50] *Id.* at 26.
[51] Emphasis added.

12

prove what has already been established by other evidence."[52] The State introduced statements from two eyewitnesses, Capers and the child. The eyewitness statements were largely consistent with each other and consistent with Defendant's admission to the police during his interview that he fired a gun into the air following an altercation with Capers' uncle. Thus, the child's 911 call was partially cumulative in that it was corroborative of key evidence in the case. However, given the small number of witness statements and the possibility of Defendant or Capers testifying at trial inconsistently with their prior statements, any "needless[ly]" cumulative aspect of the child's 911 call was *de minimus* such that exclusion was not warranted under D.R.E. 403.

Defendant's argument that the child's emotional state during the 911 call was needlessly inflammatory, such that the 911 call was excludable as prejudicial under D.R.E. 403, also lacks merit. Any potential for the child's emotional 911 call to inflame the passions of the jury was mitigated both by the call's brevity[53] and by the State's scrupulous efforts not to improperly ply the jury's sympathies. During its opening statement, the State, in passing, referred to the child's 911 call

---

[52] *Guy v. State*, 999 A.2d 863, 870 (Del. 2010) (quoting Black's Law Dictionary 380 (6th ed. 1990)); *see also United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir. 1996) ("Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates." (citing Federal Rule of Evidence 403)).
[53] Trial Tr. at 53:7–15.

13

as the 911 call of an inhabitant of the residence.[54] During trial, the State authenticated the child's 911 call through the 911 custodian without reference to the identity of the caller or the caller's emotional state.[55] Finally, during closing argument, the State touched upon the factual elements of the child's statements—Defendant was in front of the house and shot a gun—but did not reference the child's emotional state as evidence to support any fact in dispute.[56] Rather, the State made clear that Capers was the victim of the Aggravated Menacing charge and cited Capers' statements to the 911 operators as evidence that Defendant's actions placed her in fear of imminent physical injury.[57]

For the foregoing reasons, the probative value of the child's 911 call was not "substantially outweighed" by any unfair prejudice or needless cumulativeness.[58] Therefore, Defendant has failed to show either that trial counsel's performance fell below an objective standard of reasonableness for failing to file a motion *in limine* under D.R.E. 403 to exclude the child's 911 call or that Defendant was thereby prejudiced.

---

[54] *Id.* at 8:9–15.

[55] *Id.* at 46:20–49:4.

[56] *Id.* at 76:13–19.

[57] *Id.* at 76:2–12.

[58] *See, e.g., State v. Bior*, 2010 WL 5557497, at *2 (Del. Super. Dec. 29, 2010) (finding that the probative value of the 911 call at issue was not "substantially outweighed" merely because the call was emotionally volatile).

14

## B. Capers' 911 Call

In support of his second argument, that trial counsel was ineffective for failing to object to portions of Capers' 911 call as inadmissible hearsay, Defendant argues that Capers calmed down throughout her 911 call, such that portions of the call were inadmissible hearsay and not excited utterances.

This basis for relief is procedurally barred by Rule 61(i)(4). Trial counsel challenged the admission of Capers' 911 call as an excited utterance, and the Court explicitly ruled that the portion of Capers' 911 call that was played for the jury was admissible as an excited utterance.[59] This determination was upheld on appeal.[60] Therefore, although couched as a matter of ineffective assistance of counsel, the claim is barred by Rule 61(i)(4).

## Ground Three

In his third ground for relief, Defendant asserts that trial counsel provided ineffective assistance by failing to contact Capers as a potential defense witness even after she sent letters to two Superior Court judges seeking to have Defendant's charges dropped.[61] In further support of this assertion, Defendant submitted an Affidavit, wherein Capers claims that, at the time of the offense: (1) she was not placed in fear that Defendant would harm her; (2) Defendant "never

---

[59] *Id.* at 51:22–52:18.
[60] *Carter*, 2014 WL 7010032, at *2.
[61] D.I. 10, 39.

15

pointed a gun at me;" and (3) she would have testified at trial consistently with her Affidavit.[62] Defendant concludes that trial counsel should have pursued Capers as a witness and presented her testimony at trial.

As the United States Supreme Court stated in *Strickland*, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[63] Because there are "countless ways to provide effective assistance in any given case," "[j]udicial scrutiny of counsel's performance must be highly deferential."[64] In regard to defense counsel's duty to investigate:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.[65]

Finally, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions," and "[w]hen a defendant has given counsel reason to believe that pursuing certain

---

[62] D.I. 65 at A205–06.

[63] 466 U.S. at 686.

[64] *Id.* at 689.

[65] *Id.* at 690–91.

16

investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."[66]

In his Affidavit, trial counsel denies that he provided ineffective assistance of counsel by not contacting Capers. According to trial counsel, throughout the course of trial counsel's representation of Defendant, Defendant hoped and believed that Capers would not appear for trial, and "[a]t no time did the [Defendant] ever request that Morlicea Capers be subpoenaed for trial as a defense witness."[67]

Beyond Defendant's failure to request that Capers be pursued as a defense witness, Defendant's assertion that Capers' proposed testimony would have aided the defense is not certain. First, had Capers testified at trial, the State would have had the opportunity to cross examine Capers regarding her ongoing relationship with Defendant (as the mother of his children) and to impeach her through any inconsistencies between her in court testimony and her prior statements. In fact, the State anticipated that Capers might testify inconsistently with her statements to police and informed trial counsel prior to trial of the State's intention to call Capers and preparedness to introduce Capers' prior statements.[68]

---

[66] *Id.* at 691.

[67] D.I. 70. Trial counsel's records reflect that trial counsel discussed the importance of Capers' 911 call to the State's case with Defendant. *Id.*, Ex. B.

[68] D.I. 70, Ex. B (recounting trial counsel's discussion with the prosecutor).

Second, had Capers testified at trial, trial counsel would have lost opportunities to challenge the State's case based on Capers' absence from trial. For example, during closing argument, trial counsel highlighted Capers failure to appear as a failure of the State to produce best evidence.[69] Further, trial counsel exploited the limitations of Capers' 911 call as evidence that Defendant placed Capers in fear of imminent physical injury. Trial counsel pointed to Capers' statement that she was inside the residence and the 911 dispatcher's instruction that Capers stay away from the window as evidence that Defendant (who was outside the residence) could not have *displayed* a gun to Capers.[70] This opportunity may have been lost had Capers testified in accordance with her Affidavit. In her Affidavit, Capers does not deny that Defendant displayed a gun to her or that Defendant fired a gun, she denies that Defendant pointed a gun at her.[71]

In sum, Defendant gave trial counsel reason to believe that pursuit of Capers as a witness would have been fruitless because Capers likely would not appear for trial. Had Capers appeared, she would likely have been impeached by the State (if she testified consistently with her Affidavit), and trial counsel would have lost opportunities to attack the State's case based on her absence. Thus, trial counsel's

---

[69] Trial Tr. at 80:20–81:2.
[70] *Id.* at 81:3–23; 11 *Del. C.* § 602 ("A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon . . . .").
[71] D.I. 65 at A205–06.

18

decision not to pursue Capers as a defense witness was professionally reasonable and does not support an ineffective assistance of counsel claim.

**Ground Four**

In his fourth ground for relief, Defendant asserts that trial counsel provided ineffective assistance by failing to object to Capers' hearsay statements that were introduced through the responding officer's testimony.[72] Defendant asserts that Capers was no longer under stress from a startling event at the time the officer responded and, therefore, her statements to the officer were inadmissible hearsay. Defendant argues that he was prejudiced by the statements' admission because the statements further incriminated him.

Assuming, *arguendo*, that Capers' statements to the officer were not excited utterances, Defendant was not prejudiced by the officer's recounting of Capers' statements to him. The State asked the responding officer what Capers told him when he arrived, and the officer stated:

> She told me that her ex-boyfriend, Arthur Carter—she had a dispute with him inside the residence, which was a physical altercation, and he had fled the residence and then returned to the residence with a handgun and had fired a round up in the air in front of the house and fled in a silver vehicle just prior to my arrival.[73]

This short recitation was duplicative of the non-testimonial, excited utterances made by Capers and the child in their 911 calls. *Inter alia*, Capers told 911 that

---

[72] D.I. 64 at 34–37.
[73] Trial Tr. at 39:7–15.

19

Defendant, her "baby dad," was outside the house, had a gun, was trying to shoot her, and had fired shots.[74] After Defendant left, Capers told 911 Defendant fled in a silver rental car.[75] Similarly, the child told 911 that her cousin's baby dad was outside the house with a gun, had fired a shot, and was trying to shoot the child's father and the child's cousin.[76] Beyond the non-testimonial, excited utterances made by Capers and the child, Defendant admitted to police that he was at the residence, he had an altercation with Capers' uncle, and he fired a gun into the air.[77] Thus, although the officer's recitation may have further incriminated Defendant, the statements were insignificant in light of more prominent, and probative, evidence submitted in the case.

For the foregoing reasons, it is not reasonably probable that, but for the admission of Capers' statements through the responding officer, the result of the trial would have been different. Therefore, Defendant has failed to show prejudice to support an ineffective assistance of counsel claim.

**Ground Five**

In his fifth ground for relief, Defendant asserts that appellate counsel provided ineffective assistance when appellate counsel failed to raise the denial of trial counsel's motion for a judgment on acquittal on direct appeal. In support of

---

[74] D.I. 65 at A37–42.
[75] Id.
[76] Id. at A48–49.
[77] Trial Tr. at 61:12–62:21.

20

this assertion, Defendant reiterates the argument made by trial counsel at trial: there was not a sufficient basis in fact for a finding of guilt as to the charges of Aggravated Menacing and PFDCF.

"In reviewing a claim for insufficiency of evidence, the Court must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the charged crime."[78] At trial, the State did not dispute trial counsel's assertion that the State had not produced direct evidence that Capers was in fear of imminent physical injury.[79] Accordingly, in its response to Defendant's motion for a judgment of acquittal, the State argued that its burden was met through circumstantial evidence, including Capers' statements to the 911 dispatcher that Defendant was trying to shoot her and the responding officer's testimony that Capers was in an excited and agitated state when he arrived at the residence. Viewed in the light most favorable to the State, a rational jury could conclude that Capers was in fear of imminent physical injury.

For the foregoing reasons, Defendant has failed to demonstrate prejudice on this ground for relief.

---

[78] *Dunn v. State*, 123 A.3d 471, 2015 WL 5032067, at *3 (Del. 2015) (TABLE) (citing *Williamson v. State*, 113 A.3d 155, 158 (Del. 2015)).
[79] Trial Tr. at 70:3–71:10.

21

## CONCLUSION

**NOW THEREFORE**, for the foregoing reasons, Defendant's Amended Motion for Postconviction Relief is **DENIED.**

**IT IS SO ORDERED.**

Jan. R. Jurden, President Judge

22